**R23 LAW APC**
Peng Shao (319624)
Jared V. Walder (310687)
Litigation@R23Law.com
633 West Fifth St. 26th Floor
Los Angeles, CA 90071
Tel: 888-533-2948
Fax: 415-558-0230

*Attorneys for Plaintiff*
*Raymond Martines*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**RAYMOND MARTINES;** an individual;

Plaintiff,

v.

**BANK OF AMERICA, N.A.; and DOES 1 to 50,** inclusive;

Defendants.

CASE NO. 2:26-CV-00974-DJC-CSK

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF:**

1. ELECTRONIC FUNDS TRANSFER ACT;
2. CALIFORNIA COMMERCIAL CODE;
3. FINANCIAL ELDER ABUSE;
4. BUS. & PROF. CODE § 17200

**JURY TRIAL DEMANDED**

Plaintiff RAYMOND MARTINES ("Plaintiff"), an individual, files this First Amended Complaint as of right against Defendants BANK OF AMERICA, N.A. ("BOA"), and DOES 1 to 50, inclusive (collectively "Defendant(s)"), and based on information and belief, hereby alleges and complains as follows:

## INTRODUCTION

1. This is a case about an innocent consumer who had money fraudulently stolen from them via multiple rounds of unauthorized electronic fund transfers – and bank defendant's unlawful actions in failing to protect the consumer, to prevent the fraud/theft, and to correct its own unlawful errors.

2. Plaintiff is the consumer and a long-time customer of Defendant BOA.

3. In 2025, Plaintiff discovered multiple fraudulent and unauthorized financial transactions had been made on their account(s) managed and operated by Defendants.

4. Plaintiff immediately and repeatedly reported and disputed these fraudulent transactions with Defendant upon discovery of the unauthorized electronic fund transfers ("EFTs").

5. Plaintiff also reported the unauthorized EFTs with law enforcement, and provided the relevant police report(s) to Defendant.

6. However, Defendant failed to adequately and properly investigate these unauthorized EFTs, and failed to protect Plaintiff as required by the law.

7. As of the filing of this action, Defendant has failed to protect Plaintiff from this fraud/theft, conduct reasonable investigations as required by the law, or correct the fraudulent transactions.

8. Plaintiff now brings this action for violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq*. ("EFTA"), and state law.

9. Plaintiff seeks actual, statutory, civil, and punitive damages for the harm that they have suffered.

10. Plaintiff makes these allegations on information and belief, with the

R23 LAW

exception of those allegations that pertain to the Plaintiff, which Plaintiff alleges on personal knowledge.

11. While many violations are described below with specificity, this complaint alleges violations of the statutes cited in their entirety.

12. All violations by Defendants were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

13. Unless otherwise indicated, the use of a Defendants' names in this Complaint includes all agents, principals, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## **JURISDICTION AND VENUE**

14. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 due to federal claims.

15. Jurisdiction is proper because the amount in controversy exceeds the jurisdictional minimum, and this case involves the violation of federal statutes.

16. Because all Defendants conduct business within the State of California, personal jurisdiction is established.

17. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all times relevant.

## **PARTIES**

18. Plaintiff RAYMOND MARTINES is a natural person and resident of San Joaquin County, California.

19. Plaintiff is a "consumer" as that term is defined by the EFTA.

20. Defendant BOA is an out-of-state corporation doing business in the State of California as a bank, as an information furnisher to consumer reporting agencies, a

R23 LAW

debt collector, and as a provider of credit card and bank accounts to consumers.

21. Defendant is a "financial institution" pursuant to 12 C.F.R. § 1005.2(i), and a "person" pursuant to 12 C.F.R. § 1005.2(j).

22. The true names and capacities, whether individual, corporate (including officers and directors thereof), associate or otherwise of Defendants sued herein as Does 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names, pursuant to the CCP § 474. Plaintiff is informed and believes, and thereon alleges that each Named Defendant and each Defendant designated as a Doe is involved in or is in some manner responsible as an officer, director, managing agent, principal, beneficiary, agent, co-conspirator, joint venturer, alter ego, third-party beneficiary, or otherwise, for the agreements, transactions, events and/or acts hereinafter described, and thereby proximately caused injuries and damages to Plaintiff. Plaintiff requests that when the true names and capacities of these DOE Defendants are ascertained, they may be inserted in all subsequent proceedings, and that this action may proceed against them under their true names.

## FACTUAL ALLEGATIONS

23. Plaintiff is an individual consumer who maintained personal deposit account(s) with Defendant BOA, including at least a checking account ending in 1452 and a savings account ending in 5325 (the "Accounts").

24. The Accounts were used primarily for personal, family, or household purposes.

25. BOA provided electronic fund transfer ("EFT") services in connection with the Accounts, including online banking transfers, telephone/agent-assisted transfers, and ATM cash withdrawals.

26. On or about December 19, 2024, BOA itself detected and flagged suspicious activity on the checking account ending in 1452.

27. BOA mailed Plaintiff a written notice (Reference No. DCD3UVBAV) advising that, "[a]s a precaution[,] we blocked your Online Banking access because

R23 LAW

we detected suspicious activity," and instructing Plaintiff to call BOA's fraud line at 877.302.6565.

28. BOA thereby had actual knowledge, as of no later than December 19, 2024, that Plaintiff's account had been compromised or was being targeted by unauthorized actors.

29. Notwithstanding its actual knowledge of suspicious activity and its temporary block of Plaintiff's online banking access, BOA thereafter accepted, processed, and executed the series of unauthorized transactions described below, including dozens of out-of-state ATM withdrawals and a high-dollar telephone-initiated transfer, without conducting the additional verification or escalation that the circumstances required.

30. In 2025, one or more unknown person(s) (the "Unauthorized Actor(s)") initiated a series of EFTs from Plaintiff's Accounts without Plaintiff's knowledge, authorization, or permission.

31. Plaintiff did not initiate, authorize, or benefit from the Unauthorized Actor(s)' EFTs, and Plaintiff did not provide the Unauthorized Actor(s) with authority to access the Accounts or to conduct EFTs.

32. Specifically, an unauthorized EFT was made to the checking account ending in 1452 in the amount of approximately $2,006.00.

33. A second unauthorized EFT was made to the checking account ending in 1452 in the amount of approximately $3,500.00.

34. Thereafter, the Accounts reflect a large number of ATM cash withdrawals occurring outside Plaintiff's local area. These ATM withdrawals totaled approximately $75,000.00.

35. The Accounts also reflect multiple unauthorized EFTs from the checking account ending in 1452, including transfers in the amounts of approximately $3,000.00, $9,000.00, $7,000.00, and $10,000.00, totaling approximately $29,000.00.

36. The Accounts also reflect additional ATM withdrawals in repeated

R23 LAW

increments of $2,000.00, totaling approximately $10,000.00.

37. The unauthorized ATM withdrawals from the savings account ending in 5325 referenced above were each initiated from out-of-state ATMs in or near Knoxville, Tennessee (including BKOFAMERICA ATMs at Turkey Creek and Cedar Bluff).

38. Plaintiff resides in San Joaquin County, California, did not travel to Tennessee during the relevant period, and did not initiate, authorize, or benefit from any of these withdrawals.

39. Multiple unauthorized EFTs were conducted on Plaintiff's accounts after March 18, 2025, the date precisely one year before this action was filed, thus satisfying the EFTA's statute of limitations.

40. Without limitation, individual unauthorized $2,000 ATM withdrawals occurred on the following dates in 2025: March 24, March 25, March 26, March 27, March 28, March 29, March 30, March 31 (multiple), April 1, April 2, April 3, April 4, April 5, April 6, April 7 (multiple), April 8, April 9, and April 10 (a $1,280 partial-balance withdrawal). Each such withdrawal post-dates March 18, 2025, the date precisely one year before this action was filed.

41. On or about March 21, 2025, Plaintiff made a substantial deposit at a BoA financial center in Lodi, California, in the amount of approximately $51,286.87, to restore funds to the Accounts.

42. The Accounts further reflect an unauthorized EFT to the checking account ending in 1452 in the amount of approximately $12,000.00.

43. Specifically, the foregoing unauthorized $12,000.00 transfer was initiated as a telephone-initiated funds transfer (Confirmation No. 4665378250), debited from the savings account ending in 5325, and credited to the checking account ending in 1452 on or about March 24, 2025, where it was then drained by the continuing series of out-of-state ATM withdrawals described above. This transfer post-dates March 18, 2025 and was not initiated, authorized, or instructed by Plaintiff.

R23 LAW

44. In total, the unauthorized EFTs transferred more than $130,000.00 from Plaintiff's Accounts.

45. Plaintiff did not authorize any of the foregoing activity.

46. Plaintiff promptly disputed the unauthorized EFTs with BOA after discovery, including by contacting BoA and requesting that the unauthorized activity be investigated and corrected.

47. Plaintiff also reported the theft to law enforcement and obtained a police report documenting the unauthorized EFTs.

48. BOA denied Plaintiff's claims. In its determinations, BOA stated it was "unable to approve" Plaintiff's claim(s) and asserted the charge(s) were authorized by Plaintiff or by someone with permission to use the account.

49. Specifically, BOA issued written denial determinations to Plaintiff on the following dates: (a) on or about August 28, 2025, BOA denied Plaintiff's claim relating to the checking account ending in 1452 (Claim No. 250812530933, in the amount of $44,300.00); and (b) on or about October 17, 2025, BOA denied Plaintiff's claim relating to the savings account ending in 5325 (Claim No. 250812531113, in the amount of $43,500.00). Each denial constituted a discrete violation of 15 U.S.C. § 1693f and Regulation E and occurred within one year before this action was filed.

50. In response, Plaintiff sent BOA additional written dispute letters via certified mail identifying the unauthorized transfers totaling over $130,000.00, denying authorization, and demanding that BOA properly investigate and return the fraudulently transferred funds. Plaintiff enclosed the police report and supporting documents.

51. Despite Plaintiff's disputes and supporting documentation, BOA failed to promptly correct the errors and failed to recredit Plaintiff's Accounts for the unauthorized EFTs.

52. Specifically, on or about February 17, 2026, Plaintiff sent BOA a written dispute letter via United States Postal Service Certified Mail (Tracking No. 9589 0710

5270 2739 7712 34), expressly identifying both Accounts (1452 and 5325), denying authorization of the more than $130,000.00 in unauthorized debits, enclosing the Lodi Police Department report, and demanding that BOA investigate and return the funds.

53. BOA failed to respond to that written notice of error within ten business days, failed to provisionally re-credit Plaintiff's Accounts, failed to complete a reasonable investigation, failed to deliver the documents on which it relied as required by 15 U.S.C. § 1693f(d), and failed to re-credit Plaintiff's Accounts. Each such failure constitutes a discrete violation of 15 U.S.C. § 1693f and Regulation E and occurred within one year before this action was filed.

54. As a direct result of Defendant's unlawful actions, omissions, and inaction, Plaintiff has suffered damage by loss of money of at least $130,000.00, invasion of privacy, mental and emotional pain, anguish, humiliation and embarrassment, as well as physical manifestations of these emotional states. All such damages have been suffered in the past, are continuing to be suffered, and such damages will continue in the future.

## FIRST CAUSE OF ACTION

Violation of the Electronic Funds Transfer Act (EFTA)

*[Against All Defendants]*

55. Plaintiff hereby re-alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

56. The Electronic Fund Transfer Act ("EFTA") and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

57. The primary objective of EFTA is "the protection of individual consumers engaging in electronic fund transfers and remittance transfers." 12 C.F.R. § 1005.1(b).

58. Financial institutions have error resolution obligations pursuant to

R23 LAW

Regulation E in the event that a consumer notifies the financial institution of an error. 12 C.F.R. § 1005.11.

59. Plaintiff is a "consumer" pursuant to 12 C.F.R. § 1005.2(e).

60. Defendant is a "financial institution" pursuant to 12 C.F.R. § 1005.2(i), and a "person" pursuant to 12 C.F.R. § 1005.2(j).

61. Pursuant to the EFTA, an error includes "an unauthorized electronic fund transfer." *Id.* § 1693f(f).

62. An Electronic Fund Transfer ("EFT") is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(b)(1). Accordingly, Regulation E applies to any P2P or mobile payment transactions that meet the definition of EFT. 12 C.R.F. 1005.3(b)(1)(v); *id.*, Comment 3(b)(1)–1ii.

<u>INVESTIGATION RESULTS</u>

63. "If a financial institution, within sixty days after having transmitted to a consumer pursuant to [15 U.S.C. ] § 1693d(a), (c), or (d) of this title or notification pursuant to [15 U.S.C. ] § 1693(d) of this title, receives oral or written notice in which the consumer[:] (1) sets forth or otherwise enables the financial institution to identify the name and the account number of the consumer; (2) indicates the consumer's belief that the documentation, or, in the case of notification pursuant to [15 U.S.C. ] § 1693d(b) of this title, the consumer's account, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred," the financial institution is required to investigate the alleged error. 15 U.S.C. § 1693f(a).

64. After said investigation, the financial institution must determine whether an error has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. *Id.*

65. If a financial institution provides a provisional credit in the first 10 days

R23 LAW

for the amount disputed, then the financial institution is afforded forty-five (45) days after receipt of notice of error to investigate. *Id.* § 1693f(c).

66. Unauthorized EFTs are EFTs from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 C.F.R. 1005.2(m).

67. According to the CFPB and FDIC, when a third party fraudulently induces a consumer into sharing account access information that is used to initiate an EFT from the consumer's account, that transfer meets Regulation E's definition of an unauthorized EFT.

68. In particular, Comment 1005.2(m)–3 of Regulation E explains that an unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through robbery or fraud. As such, when a consumer is fraudulently induced into sharing account access information with a third party, and a third party uses that information to make an EFT from the consumer's account, the transfer is an unauthorized EFT under Regulation E.

69. Here, unknown fraudsters gained access to Plaintiff's bank accounts and initiated a series of financial transactions via EFTs without their authorization.

70. Plaintiff notified Defendant of these errors within sixty (60) days of their appearances on Plaintiff's account.

71. After receiving notice of the unauthorized EFT on Plaintiff's account, Defendant erroneously concluded that the unauthorized EFTs were not the result of an error.

72. As a direct and proximate result of the conduct of Defendant, Plaintiff was unable to reclaim funds that were fraudulently taken from their accounts within the authorized period for error resolution.

73. Upon information and belief, Defendant knowingly and willfully failed to fulfill their obligations to investigate Plaintiff's unauthorized transactions and instead summarily concluded that the transfers of funds were not in error when such

R23 LAW

conclusions could not reasonably have been drawn from the evidence available to the financial institutions at the time of the investigation. 15 U.S.C. § 1693f(e)(2).

74. Upon information and belief, Defendant intentionally determined that the unwanted transfers of funds were not in error due to, at least in part, Defendant's own financial self-interest, *i.e.* to avoid their liability to Plaintiff for the unauthorized transfers pursuant to Regulation E.

75. Defendant's refusal to completely reverse or refund funds to Plaintiff as required under Regulation E, § 1005.6 and 15 U.S.C. § 1693(g).

76. Pursuant to 15 U.S.C. § 1693f(d), if a financial institution determines after conducting an investigation that an error did not occur, it must, upon receipt of a request from the consumer, promptly deliver to the consumer reproductions of all documents with the financial institution relied on to conclude that such error did not occur.

77. Plaintiff demanded the investigation documentation in their formal dispute letters, however, Defendant never provided these documents.

78. Each of the following constitutes a separate "occurrence of the violation" within the meaning of 15 U.S.C. § 1693m(g), each of which occurred within one year before this action was filed on March 18, 2026: (a) each unauthorized EFT and ATM withdrawal posted to Plaintiff's Accounts on or after March 18, 2025, including without limitation the March 24, 2025 telephone-initiated $12,000.00 transfer and the series of $2,000.00 out-of-state ATM withdrawals occurring between March 22, 2025 and April 10, 2025; (b) BOA's denial of Plaintiff's claims on August 28, 2025 (Acct 1452, Claim No. 250812530933) and October 17, 2025 (Acct 5325, Claim No. 250812531113), in each instance summarily concluding that the disputed transfers were "authorized" on a record that could not reasonably support that conclusion, in violation of 15 U.S.C. § 1693f(e); (c) BOA's failure to investigate, provisionally re-credit, deliver supporting documents, and re-credit Plaintiff's Accounts following Plaintiff's February 17, 2026 certified-mail dispute, in violation of 15 U.S.C. §§

R23 LAW

1693f(a)–(d) and 12 C.F.R. § 1005.11; and (d) BOA's continuing failure to re-credit Plaintiff's Accounts for the unauthorized EFTs, which constitutes an ongoing violation that has not abated.

79. As a result of each of violation, Plaintiff is entitled to any actual damages, statutory damages, limitation of liability, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m.

## **SECOND CAUSE OF ACTION**

Violation of the California Uniform Commercial Code (Cal. U. Com. Code §§ 11202, 11204, et seq.)

*[Against All Defendants]*

80. Plaintiff hereby re-alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

81. Plaintiff is, and at all relevant times was, a customer of Defendant and maintained personal deposit account(s) with Defendant.

82. This cause of action is pled in the alternative to, and not in lieu of, Plaintiff's First Cause of Action under the EFTA. Cal. Com. Code § 11108(a) excludes from Division 11 only those funds transfers "governed by" the Electronic Fund Transfer Act of 1978. To the extent any of the disputed transfers debited from Plaintiff's Accounts — including, without limitation, the telephone-initiated transfers, any wholesale wire transfers, and any transfers initiated by means other than an "access device" (as defined in 12 C.F.R. § 1005.2(a)) — fall outside the scope of EFTA and Regulation E (see, e.g., 12 C.F.R. § 1005.3(c)(3) (excluding wire and similar transfers); 12 C.F.R. § 1005.3(b)(1) cmt. 1.iii), such transfers constitute "funds transfers" governed by Division 11 (Article 4A) of the California Commercial Code, and Plaintiff alleges this cause of action with respect to those transfers.

83. Defendant accepted, processed, and executed a series of payment orders purporting to be issued in Plaintiff's name, including transfers to recipients with

R23 LAW

whom Plaintiff had no prior relationship.

84. Plaintiff did not initiate, authorize, sign, approve, or benefit from the payment orders, which were not authorized orders of Plaintiff.

85. Under Cal. U. Com. Code section 11202, a payment order is an "authorized order" of a customer only if authorized by the customer or by a person with authority to act for the customer. The payment orders are not effective orders of Plaintiff because:

a. Plaintiff did not agree to a commercially reasonable "security procedure" for verifying payment orders of this type and magnitude;

b. Defendant did not accept the payment orders in good faith and in compliance with any such security procedure and any written agreement or instruction of Plaintiff;

c. the circumstances—including multiple high-dollar, atypical transfers, fraud alerts, and other red flags—required additional verification and inquiry that Defendant failed to perform before executing the transfers.

86. Defendant's acceptance of the unauthorized payment orders was not authorized by Plaintiff and was not effective as the orders of Plaintiff under Cal. U. Com. Code section 11202, or Defendant is otherwise not entitled to enforce or retain payment of the payment orders within the meaning of Cal. U. Com. Code section 11204.

87. Cal. U. Com. Code section 11204 requires that, to the extent a receiving bank is not entitled to enforce or retain payment of an unauthorized or unenforceable payment order, the bank must refund the amount paid by the customer, and must pay interest from the date the bank received payment to the date of the refund.

88. Plaintiff promptly notified Defendant of the fraud and disputed the transfers. Plaintiff provided notice within a reasonable time under the circumstances.

R23 LAW

89. Despite Plaintiff's timely notice and dispute, Defendant failed and refused to refund the unauthorized debits and has continued to withhold Plaintiff's funds.

90. As a direct and proximate result of Defendant's violations of Cal. U. Com. Code sections 11202 and 11204, Plaintiff has suffered damages including, at minimum:

a. Loss of money wrongfully transferred from Plaintiff's account(s);

b. Interest as required by Cal. U. Com. Code section 11204; and

c. Additional damages according to proof.

91. Plaintiff seeks all relief available under Cal. U. Com. Code Division 11, including refund of the unauthorized payment amounts, interest, costs of suit, and such other and further relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION**

Financial Elder Abuse

*[Against All Defendants]*

92. Plaintiff hereby re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

93. At all relevant times, Plaintiff was an "elder" within the meaning of Welfare and Institutions Code section 15610.27 because Plaintiff is 73 years old.

94. Plaintiff's funds on deposit with Defendant constitute "property" within the meaning of  Welfare and Institutions Code section 15610.30.

95. As alleged above, third-party wrongdoers induced or caused the transfer of Plaintiff's funds by fraudulent and deceptive means, resulting in a series of high-dollar outgoing transfers debited from Plaintiff's account(s).

96. Plaintiff did not intend to make these transfers for any legitimate purpose, did not receive any benefit from them, and did not authorize the third-party wrongdoers to initiate funds transfers from Plaintiff's account(s).

97. Welfare and Institutions Code section 15610.30(a)(2) provides that

R23 LAW

"financial abuse" occurs when a person or entity "assists in taking, secreting, appropriating, obtaining, or retaining" property of an elder for a wrongful use or with intent to defraud, or both.

98. Defendant assisted the third-party wrongdoers' taking, obtaining, or retaining of Plaintiff's property by, among other things:

a. accepting, processing, and executing the disputed outgoing EFTs notwithstanding circumstances demonstrating a high probability of fraud and elder exploitation;

b. failing to implement reasonable safeguards, holds, and escalation procedures in response to atypical, high-dollar EFT inconsistent with Plaintiff's account history or stated purposes;

c. failing to conduct reasonable verification commensurate with the magnitude, atypical nature, and risk indicators of the transfers before executing them;

d. failing to stop, reject, suspend, or timely recall and remediate the transfers once Defendant's systems or personnel were on notice of suspected fraud; and

e. refusing to return Plaintiff's funds despite notice of the fraud, thereby assisting the wrongdoers in retaining the proceeds of the fraudulent transfers.

99. Defendant's assistance was for a "wrongful use" within the meaning of Welfare and Institutions Code section 15610.30(b) because Defendant actually knew that its conduct was assisting third-party wrongdoers in taking, obtaining, and retaining Plaintiff's property and was likely to be harmful to Plaintiff.

100. Specifically, Defendant had actual knowledge, or at minimum was on notice, of facts indicating suspected fraud and elder exploitation, including but not limited to:

a. multiple high-dollar outgoing transfers over a short period of time,

R23 LAW

inconsistent with ordinary consumer account activity;

b. Defendant's own fraud detection systems and communications reflecting suspicious or potentially unauthorized activity related to Plaintiff's account(s); and

c. Defendant's own December 19, 2024 written notice to Plaintiff (Reference No. DCD3UVBAV) advising that BOA had detected "suspicious activity" on the checking account ending in 1452 and had blocked Plaintiff's online banking access as a precaution — constituting Defendant's own admission of actual knowledge that Plaintiff's account was being targeted by fraud, months before Defendant proceeded to honor the unauthorized telephone-initiated transfer and out-of-state ATM withdrawals described above; and

d. Plaintiff's prompt report to Defendant disputing the transfers and reporting fraud.

101. As a direct and proximate result of Defendant's financial elder abuse, Plaintiff suffered damages including, at minimum, loss in the amount of the unauthorized EFTs, interest, and emotional distress.

**FOURTH CAUSE OF ACTION**

Violation of Cal. Bus. & Prof. Code § 17200 *et seq*. (UCL)

*[Against All Defendants]*

102. Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

103. Pursuant to Cal. Bus. & Prof. Code section 17200 et seq, Defendants were obligated to refrain from engaging in unfair business practices, including the unfair business practice of violating the laws detailed above.

104. It is the policy of the State of California to enforce consumer protection

R23 LAW

laws, and to protect those businesses who comply with the law from losing competitive advantage to other businesses who fail to comply.

105. Defendants have engaged in the unfair business practices of consistently and knowingly committing the violations against Plaintiff as alleged in this complaint.

106. Plaintiff is a "person" within the meaning of the Business & Professions Code section 17204, and thus possesses standing to bring this suit for injunctive relief. As alleged in this complaint, Plaintiff has suffered injury in fact from the unfair business practices of Defendants as required by Business & Professions Code section 17204.

107. The conduct of Defendants, as described herein, constitutes unlawful, unfair, and fraudulent business practices prohibited by Cal. Bus. & Prof. Code section 17200.

108. Defendants violated multiple statutes, including but not limited to the EFTA as described herein this Complaint.

109. Each statutory violation constitutes an independent basis for liability under the "unlawful" prong of the UCL.

110. Defendants' conduct also constitutes "unfair" business practices under the UCL because: Defendants' practices undermine the consumer protection scheme created by the EFTA.

111. Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' UCL violations, including actual damages in money lost and in emotional distress in disputing the fraudulent EFTs that underlie this action.

112. Plaintiff's remedies at law are inadequate to provide complete relief for the harm caused by Defendant's unlawful, unfair, and fraudulent business practices. Among other things: (a) the EFTA caps statutory damages at $1,000.00 per consumer per action, see 15 U.S.C. § 1693m(a)(2)(A), and does not authorize the full measure of make-whole relief Plaintiff seeks; (b) the EFTA does not provide for restitution of the full amount of unauthorized transfers independent of the actual-damages

R23 LAW

framework, including pre-investigation accrued interest under Cal. Com. Code § 11204; (c) Plaintiff's damages include consequential and emotional-distress injuries that may not be fully recoverable under the legal claims pled herein; and (d) BOA's continuing retention of, and refusal to re-credit, more than $130,000.00 in funds wrongfully debited from Plaintiff's Accounts is a continuing harm for which equitable restitution under the UCL is necessary to restore Plaintiff to the status quo ante.

113. Plaintiff also seeks restitution of any amounts wrongfully collected, attorney fees under Cal. Code Civ. Proc. Section 1021.5, and any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

1. For declaration that Defendants' practices violate the law;
2. For actual, compensatory, special, and general damages in an amount according to proof;
3. For statutory penalties and punitive damages for each separate statutory violation where allowed by statute;
4. For treble damages under Cal. Civ. Code § 3345;
5. For pre- and post- judgment interest;
6. For reasonable attorney's fees and costs;
7. For injunctive relief as applicable; and
8. For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED.**

R23 LAW

Respectfully submitted,

DATED: May 15, 2026

BY: */S/ Peng Shao*

Peng Shao, ESQ

**R23 LAW APC**
Peng Shao
Peng@R23Law.com

*Attorney for Plaintiff*
*Raymond Martines*

R23 LAW

## ELECTRONICALLY STORED INFORMATION REQUEST

This notice is to demand that you preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issues in the above-entitled matter. This specifically includes, but is not limited to, all information pertaining to the above matter, including specifically all recordings of any telephone communication between your company and Plaintiff.

As used in this request, "you" and "your" or "your client" refers to your organizations, and its predecessors, successors in interest, assignees, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, employees, servants, agents, attorneys, and accountants.

Much of the information subject to disclosure or responsive to discovery is stored on your client's current and former computer systems and other media and devices (such as: personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (for example and not as an exclusive list) potentially relevant information whether electronically, magnetically or optically stored.

This preservation obligation extends beyond ESI in yours or your client's care, possession or custody and includes ESI in the custody of others that is subject to your client's direction or control. You must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your client's obligation to do so, and you must try to secure their compliance.